UNITED STATES DISTRICT COURT　　　　FOR ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
JEFFREY COLLE,                              :
                                            :
                        Plaintiff,          :      MEMORANDUM
                                            :      AND ORDER
        - against -                         :
                                            :      05 CV 3981 (JG)
                                            :
MARC GOLDMAN,                               :
                                            :
                        Defendant.          :
----------------------------------------------------------------- X

A P P E A R A N C E S :

       MANATT, PHELPS & PHILLIPS, LLP
          7 Times Square
          New York, NY 10036
       By:   L. Peter Parcher
          Attorneys for Plaintiff

       PROSKAUER ROSE LLP
          1585 Broadway
          New York, NY 10036-8299
       By:   Peter Sherwin
          Attorneys for Defendant

JOHN GLEESON, United States District Judge:

        Jeffrey Colle and Marc Goldman joined forces in 1999 to purchase a large parcel of oceanfront property in Sagaponack, New York. Perhaps because they were then friends, Colle and Goldman failed to set forth the nature and terms of their business relationship in a signed writing. When the property, which they bought for $14.4 million, skyrocketed in value, a dispute naturally arose, resulting in this diversity action. Colle seeks (a) a declaration that the parties had a legally enforceable joint venture agreement; (b) damages for breach of (i) contract, (ii) fiduciary duty, and (iii) the duty of good faith and fair dealing; and (c) relief in *quantum*

*meruit* (*i.e.*, restitution).[1] On January 6, 2006, I denied Goldman's motion to dismiss Colle's amended complaint, and directed Colle to file a second amended complaint, which he did. Discovery having concluded, Goldman now moves for summary judgment. As discussed below, the motion is denied.

BACKGROUND

This controversy arises out of 62 choice acres of undeveloped oceanfront property in Sagaponack, New York.[2] In the summer of 1999, Colle entered into negotiations with Lehman Brothers (not a party to this action), to purchase, subdivide, develop, and resell the property. The parties dispute the anticipated corporate form of that venture. Goldman, citing certain testimony by Colle, claims that Lehman and Colle intended to form a limited liability company ("LLC"). *See* Colle Dep. 70 ("If it had gone to a deal, it would have been placed in an LLC."). Colle, citing certain testimony by Lehman representative Charlie Schoenherr, claims they contemplated a joint venture. *See* Schoenherr Dep. 15, 18 (referring to negotiations with Colle over terms of a "joint venture"). According to Schoenherr, Lehman proposed to be the "financial partner" in the enterprise, with Colle as the "general manager, general partner," receiving "50 percent of the profits" for his "sweat equity" in the daily management of the purchase, development, and resale of the Sagaponack property. *See id.* at 29.

As negotiations proceeded between Lehman and Colle, Colle began to discuss the

---

[1] In his opposition to Goldman's motion, Colle argues for relief based on promissory estoppel. *See* Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment on the Second Amended Complaint 36. As a promissory estoppel claim does not appear in the second amended complaint, I do not consider it in ruling upon Goldman's motion challenging that complaint. Should Colle wish to amend his complaint to include the claim, he should apply to the Court for leave to do so.

[2] Unless otherwise noted, the facts set forth are not in dispute.

2

property with Goldman too.  There is conflicting evidence about the precise circumstances under which Lehman dropped out of the deal.  Schoenherr testified that Lehman backed out because Colle would not contribute 10 percent of the capital, a condition Lehman required.  *See id.* at 33.  A later declaration by Schoenherr states that this testimony was not accurate, and that Lehman actually offered to finance the full purchase price at a preferred rate of return of 18 percent.  *See* Schoenherr Decl. ¶ 2.  The parties appear to agree, however, that Colle ultimately went with Goldman because Goldman offered to finance the full purchase price at a lower preferred return of eight percent.  Colle Dep. 98; *see also* Marc Goldman's Memorandum of Law in Support of His Motion for Summary Judgment ("Def. Br.") 6.

At some point in the Colle-Goldman negotiations, Goldman proposed that Colle contribute $1.5 million toward the purchase price of the property, in the form of a lien against his house.  In the end, though, Goldman bought 43.5 acres of the 62-acre parcel for $14.4 million, entirely with his own capital.  Colle testified that he "would have purchased the whole 62 acres," but since he "was [Goldman's] partner," he "wanted to do the right thing."  Colle Dep. 109-10.  Goldman (and not Colle) signed the land contract on November 2, 1999.  A rider to that contract contained an assignment provision allowing Goldman to "assign [the] contract to a limited liability company of which Marc Goldman is a member."  Posa Decl. Ex. 15 (PX 2) at MG 00471.  In December 1999, the contract was assigned to Sagaponack Ventures LLC pursuant to that provision.  The deal closed in April 2000.

Everyone agrees that Colle and Goldman anticipated forming an LLC as part of their agreement at some point, but the parties dispute the ultimate corporate form of the venture.  Colle claims the LLC was a subpart of a larger joint venture, to which he would contribute work

and Goldman would contribute money. In this regard, Colle makes various references to Goldman as his "partner." *See* Colle Dep. 86 ("[I]t was always understood that it was a joint venture. 'Partner' meant joint venture, 50/50 partner . . . ."); *id.* at 97 ("At that time, Marc was putting up the money, I was sweat, I was going to do the work, I was going to manage the subdivision process . . . ."); *id.* at 199 ("We were partners, Marc was going to put up the money, I was going to do all the work . . . ."). Colle also claims in a response to an interrogatory that, pursuant to the agreement, he "would have been responsible for 50 percent of all expenses incurred by Defendant in connection with the joint venture, [including] liabilities, upon the joint venture's sale of the Properties." Colle Interrog. Resp. 11; *see also* Colle Dep. 88 ("[W]e split the profits and the losses 50/50."); *id.* at 98 ("[W]e were going to split the profits and the losses 50/50."). Colle concedes that Goldman had "the final word" in their agreement, but claims that Goldman acknowledged his duties as a joint venturer during the course of their negotiations, saying to Colle, "I'm your partner, I'm not going to screw you. I can't -- I had the fiduciary responsibilities that I have, which is obvious." *Id.* at 155. And Goldman testified that Colle told him that Colle "was the only one that could buy the property, he was the only one that knew about it, and he was the only one that could buy it." Goldman Dep. 160.

Goldman claims there was no joint venture agreement, and contends that Colle believed that all his dealings with Goldman were entirely governed by the LLC. As evidence, Goldman points to two draft documents setting forth the terms of the contemplated entity. The first, an unsigned draft term sheet, states the purpose of the LLC was "to effect the acquisition of an undeveloped parcel of land in Sagaponic [*sic*], Long Island and its subdivision into 4 ocean front lots," and provides, *inter alia*, that Goldman "will be the sole managing member of the

4

Company," having "the full, exclusive and complete right and power exercisable in his sole discretion to operate, manage and control the business affairs of the Company." Posa Decl. Ex. 17 (PX 9) at JC 0001-02. Colle disputes that these provisions characterizing Goldman's role accurately reflected his and Goldman's agreement at the time. *See* Colle Dep. 141-42 (noting that the terms referencing Goldman were "different" than he and Goldman had discussed). The second document, an unsigned draft LLC operating agreement, states in part that "[t]he parties intend that the Company not be a partnership . . . or joint venture, and that no member be an agent, partner, or joint venturer of any other member." Second Amended Complaint Ex. C ¶ 1.6. Colle objected to certain provisions of this draft, including the requirement that he invest $1.5 million in capital and be responsible for half of any losses, but not the statement of intent.

The parties also disagree about the extent of Colle's responsibility for subdividing the land and selling the plots. Goldman claims Colle merely facilitated the surveyor and subdivision attorney's jobs, subject to Goldman's final word. *See, e.g.*, Brennan Dep. 46 ("[A]ll along Jeff had to go back to his partner and find out whether this would fly or not."). Colle claims he was heavily involved in the details of the process and had decision-making authority. *See, e.g.*, Smith Dep. 56-57 (one subdivision concept "was rejected by Mr. Colle as caving into the town . . . without getting a reasonable return on the investment"); *id.* at 75-76 (describing Colle's "concern about the traffic on Peters Pond Lane, [which] he felt . . . would be less desirable than to have access from Daniels Lane."); Asato Dep. 68 ("I discussed payment terms only with Jeffrey Colle . . . .").

In addition, Goldman claims Colle was a merely finder or broker for the purchase and sale of the land, subject to Goldman's final approval. *See, e.g.*, Colle Dep. 270 (Q. "Mr.

5

Colle, was locating a buyer or buyers for subdivided lots another of the things that you contributed to the joint venture as part of your 'sweat?' A. Attempting to find them, yes."). For example, Goldman cites a meeting between Colle and a local broker in which the broker understood that Colle required Goldman's "approval" on various terms of sale. Brennan Dep. 94-95. Colle claims that that "approval" was just a device to establish leverage in the negotiation, and that his authority was not, in reality, so conditioned. *See id.* at 83 (describing Colle as the "point person" in charge of the subdivision project).

## DISCUSSION

The central question in this case is whether Colle and Goldman formed a joint venture to purchase, subdivide, and resell the Sagaponack property. Goldman makes two arguments in support of his claim that no such joint venture existed. First, he contends that Colle was, as a matter of law, Goldman's finder or broker, and therefore that any contract between them is void by operation of the statute of frauds. Second, he argues that the record contains insufficient evidence to support a jury finding that a joint venture existed. I conclude that both arguments are without merit.

A. *The Standard of Review of Goldman's Motion for Summary Judgment*

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party must demonstrate that no genuine issue exists as to any material fact. *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1994). For summary judgment purposes, a fact is "material" when

its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Accordingly, the test for whether an issue is genuine requires "the inferences to be drawn from the underlying facts [to] be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks and citation omitted).

Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587 (quoting Fed. R. Civ. P. 56(e)) (emphasis omitted). Critically,

> the moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case. When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper.

*Gallo*, 22 F.3d at 1223-24 (citations omitted). The nonmoving party cannot survive summary judgment by casting mere "metaphysical doubt" upon the evidence produced by the moving party. *Matsushita*, 475 U.S. at 586.

B.  *Application of the Statute of Frauds*

Goldman moves for summary judgment on the ground that Colle was a finder or broker for the purposes of the Sagaponack deal. Under New York law, an unwritten agreement "to pay compensation for services rendered . . . in negotiating the purchase [or] sale . . . of any real estate or interest therein, or of a business opportunity" is void under the statute of frauds. N.Y. Gen. Oblig. L. § 5-701(a)(10). That statute "applies to various kinds of intermediaries who

7

perform limited services in the consummation of certain kinds of commercial transactions," including finders and brokers. *Freedman v. Chem. Constr. Corp.*, 43 N.Y.2d 260, 266 (1977). According to Goldman, Colle performed only the limited services of such an intermediary, specifically, the "'know-how' or 'know-who'" of the project. *Id.* at 267. Goldman points out that Colle discovered the business opportunity, was responsible for finding buyers for subdivision lots, and negotiated with at least one broker to buy the lot. I agree that a jury could reasonably conclude from this evidence that Colle's role in the deal was intended by both parties to be limited to "bringing about between principals . . . an acquisition of a significant interest in an enterprise." *Id*.

But there is also evidence that, if credited, could lead a jury to conclude otherwise, in two respects. First, taking the evidence in the light most favorable to Colle, a jury could reasonably find that Colle was himself a principal in the deal, a role that transcends the limited services of a finder or broker. *See Sussex Leasing Corp. v. US West Fin. Servs., Inc.*, 877 F.2d 200, 203 (2d Cir. 1989) (denying summary judgment on statute of frauds challenge because genuine issue of fact existed as to whether plaintiff was finder or principal). Goldman testified that Colle told him that Colle "was the only one that could buy the property, he was the only one that knew about it, and he was the only one that could buy it." Goldman Dep. 160. *See also* Schoenherr Dep. 15-16 ("[N]o one else would move forward on the deal other than Jeffrey [Colle] . . . . [I]t was his land if he could close."). This testimony supports an inference that Colle's ownership interest was a necessary condition to the deal going forward, and that Colle was intended to be a principal in the acquisition, not merely a finder or broker for it.

Second, a jury could reasonably conclude that Colle's responsibilities for

supervision of the subdivision were greater than those of a finder or broker. In *Super v. Abdelazim*, 485 N.Y.S.2d 612 (3d Dep't 1985), the Appellate Division upheld against a statute of frauds challenge an oral agreement by which the plaintiff found a location for a medical office complex and then served as a construction manager in converting the building into a suitable structure. The court reasoned that a rational jury could find such a "wide variety of services" to be "more extensive than merely negotiating a business opportunity." 485 N.Y.S.2d at 614. Similarly here, a jury could reasonably find that Colle had authority over and responsibility for the services relating to the construction of the subdivision -- including managing the surveyor and real estate attorney and making detailed decisions about the subdivision's layout -- and therefore performed services more extensive than those of a finder or broker. The question whether Colle's actual role was more than a mere intermediary is therefore a matter for the trier of fact.[3]

Goldman invokes the rule that "if part of an entire contract is void under the Statute of Frauds, the whole of such contract is void." *Dicksenson v. Dickenson Agency, Inc.*, 512 N.Y.S.2d 952, 953 (4th Dep't 1987). But the *Dickenson* rule is inapplicable in this case because its antecedent condition has not been met. As I have explained, Colle's services were not, as a matter of law, those of a finder or broker, so the finder or broker "part" of the Colle-Goldman contract is not void under the statute of frauds. Goldman appears to suggest that the *Dickenson* rule invalidates the unwritten Colle-Goldman contract because the parties agree Colle performed *at a minimum* the services of a finder or broker. *See* Def. Br. 19 ("Because Colle

---

[3] Goldman moves for summary judgment on the *quantum meruit* claim, on the theory that a finder or broker cannot circumvent the statute of frauds by recovering in *quantum meruit*. Because I reject the predicate contention that Colle was a finder or broker as a matter of law, I do not address that argument.

9

cannot dispute the finder/broker services he performed, his alleged subdivision services cannot save him from the grasp of the Statute of Frauds."). This must be wrong. Performing a finder or broker service pursuant to an agreement does not necessarily make that agreement subject to the statute of frauds. *See Dura v. Walker, Hart & Co.*, 27 N.Y.2d 346, 350 (1971) (Fuld, C.J.) (agreement between finders "to pool their efforts and share the benefits" not subject to finder-broker provision of statute of frauds because such an agreement is "closely akin to that of joint venture"). Indeed, Goldman's suggestion would require a writing for any joint venture in which a partner also did some finding or brokerage, contrary to the bright-line rule that joint ventures fall outside the statute of frauds. *See id. But see Belotz v. Jefferies & Co.*, No. 98 Civ. 2587(LAP), 1999 WL 587916, at *4 (alternative finding that plaintiff's consulting services transcended mere assistance in consummating a sale would still not prevent application of the statute of frauds because of the *Dickenson* rule), *aff'd on other grounds*, 213 F.3d 625 (2d Cir. 2000).

B.   *Evidence of a Joint Venture*

Goldman moves for summary judgment on the question whether the parties had an oral joint venture agreement to purchase, subdivide, and sell the Sagaponack property. For a joint venture to exist under New York law:

> (1) two or more persons must enter into a specific agreement to carry on an enterprise for profit; (2) their agreement must evidence their intent to be joint venturers; (3) each must make a contribution of property, financing, skill, knowledge, or effort; (4) each must have some degree of joint control over the venture; and (5) there must be a provision for the sharing of both profits and losses.

*Dinaco, Inc. v. Time Warner, Inc.*, 346 F.3d 64, 67-68 (2d Cir. 2003) (quoting *Itel Containers Int'l Corp. v. Atlanttrafik Express Serv. Ltd.*, 909 F.2d 698, 701 (2d Cir. 1990)).

Goldman challenges the sufficiency of Colle's evidence with respect to elements two, four, and five.

    1.    <u>The Parties' Intent To Be Joint Venturers</u>

Goldman argues that Colle has not carried his burden of producing evidence that "the parties mutually agreed to enter a joint venture." *DIRECTV Group, Inc. v. Darlene Invs., LLC*, No. 05 CIV. 5819(WHP), 2006 WL 2773024, at *6 (S.D.N.Y. Sept. 27, 2006). Specifically, Goldman contends that Colle has no evidence that Goldman intended a joint venture. I disagree, because a jury could conclude from the record that Goldman undertook a fiduciary duty to Colle. Because "the parties must be clear that they intend to form a joint venture, which is a fiduciary relationship, and not a simple contract," *Precision Testing Labs., Ltd. v. Kenyon Corp.*, 644 F. Supp. 1327, 1349 (S.D.N.Y.1986) (citation omitted), courts look to the existence of a fiduciary duty between the parties as extrinsic evidence of intent to form a joint venture. *See Kidz Cloz, Inc. v. Officially For Kids, Inc.*, 320 F. Supp. 2d 164, 174 (S.D.N.Y. 2004) (evidence insufficient to support a finding of mutual intent because "no reasonable juror could conclude that Moreno intended to enter into a fiduciary relationship with Schwartz, or even that Schwartz believed Moreno intended to enter into such a relationship"); *Zeising v. Kelly*, 152 F. Supp. 2d 335, 348 (S.D.N.Y. 2001) (insufficient pleading of mutual intent because mere allegation of a contract does not address "whether the parties have so joined their property, interests, skills, and risks their contributions have become one and their commingled properties and interests have been made subject to each of the others' actions, *on the trust and inducement that each would act for their joint benefit*") (emphasis added). Here, Colle testified that Goldman represented to him during their negotiations, "I'm your partner, I'm

not going to screw you. I can't -- I had the fiduciary responsibilities that I have, which is obvious." Colle Dep. 155. Goldman's acknowledgment of "fiduciary responsibilities" provides some evidence for a jury to find that Goldman had the intent to form a joint venture. Accordingly, I conclude Colle has demonstrated the existence of a genuine issue of fact as to the parties' intent.

Goldman argues that "if there was an intent to do anything here, it was to form a limited liability company . . . , which is mutually exclusive from a joint venture." Def. Br. 33. I agree that the land contract's assignment provision, the two draft LLC documents, and Colle's failure to object to one such document's express disclaimer of an intent to form a joint venture all suggest that the parties intended to buy and subdivide the land through an LLC. But the documentary evidence does not dispose of the question of intent, because "a joint venture need not be in writing." *Campo v. 1st Nationwide Bank*, 857 F. Supp. 264, 272 (E.D.N.Y. 1994) (denying motion to dismiss breach of fiduciary duty claim premised upon joint venture despite written provision of parties' contract that "Nothing in this Agreement shall make or constitute either party hereto the agent, partner or joint venturer of and with the other party"). For one thing, as I have explained, Colle's testimony provides some evidence from which a jury could find that the LLC provisions did not describe the ultimate intended form of the arrangement. For another, the absence of any final LLC documents signed by Colle, *see* Def. Br. 8, could be taken to suggest that the LLC was not the final entity contemplated by the parties.

I accept Goldman's argument that Colle and Goldman could not have maintained both an LLC and a coextensive joint venture. *See Zahr v. Wingate Creek Acquisition Corp.*, 827 F. Supp. 1061, 1069 (S.D.N.Y. 1993) (rejecting claim that incorporated entity was joint venture

12

because "it is axiomatic that individuals may not, as a matter of law, operate a business entity as a partnership for the purposes of defining their rights vis-a-vis each other, while concurrently holding the entity out to the general public as a corporation"). Accordingly, I reject Colle's claim that "the parties' intent to form an LLC to act as a vehicle to acquire the properties does not negate the fiduciary character of their joint venture agreement," Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment on the Second Amended Complaint 21, insofar as that claim suggests the parties intended the joint venture and the LLC to be one and the same entity. But, as counsel for Goldman conceded at oral argument, nothing prohibited the formation of an LLC to hold the Sagaponack property within a larger joint venture. Because a reasonable jury could conclude that Colle and Goldman intended to form such an enterprise, I conclude the question of intent to form a joint venture should be tried before a finder of fact.

    2.    <u>Joint Control</u>

Goldman argues that he had full control over the Sagaponack venture. "The control deemed essential for a joint venture is power over decision-making." *Stratford Group, Ltd. v. Interstate Bakeries Corp.*, 590 F. Supp. 859, 863 (S.D.N.Y. 1984). The question is therefore whether a jury could reasonably conclude that Colle had the power to make decisions. Certain testimony that Goldman had the "final word" on decisions relating to the venture, Colle Dep. 155, *see also* Brennan Dep. 94-95, undercuts Colle's claim that the answer to this question is yes. But if a jury believes Goldman assumed "fiduciary responsibilities" to Colle, as I have concluded it could, it could view the "final word" evidence not to imply Goldman's final and exclusive decision-making power, but rather a practical understanding between business partners that they would reach a consensus to responsibly discharge their fiduciary responsibilities to

each other before making decisions. Indeed, such an arrangement is no doubt common in a joint venture's "relationship of trust and confidence." *Union Carbide Corp. v. Montell N.V.*, 944 F. Supp. 1119, 1132 (S.D.N.Y. 1996) (internal quotation marks omitted). I therefore conclude that there is a genuine issue of material fact regarding the question of joint control.

      3.    <u>Sharing of Losses</u>

Goldman argues that there was no joint responsibility for liabilities in the Sagaponack venture. I conclude, however, that there is evidence from which a jury could reasonably find to the contrary. Joint partners must accept the risks of their venture in addition to its rewards, and thus "the crucial element of a joint venture is the existence of 'a mutual promise or undertaking of the parties to share in the profits . . . *and submit to the burden of making good the losses*.'" *Mallis v. Bankers Trust Co.*, 717 F.2d 683, 690 (2d Cir. 1983) (quoting *Steinbeck v. Gerosa*, 4 N.Y.2d 302, 317 (1958)). In this regard, Colle stated at least twice in his deposition that he agreed to split "losses" evenly with Goldman. Colle Dep. 88, 98. He also answered in a sworn response to an interrogatory that he "would have been responsible for 50 percent of all expenses incurred by Defendant in connection with the joint venture, [including] liabilities, upon the joint venture's sale of the Properties." Colle Interrog. Resp. 11. Goodman takes Colle to task for describing the risk he assumed with imprecision, noting that Colle never testified in his deposition "that one of the agreed-upon terms was to assume *personal responsibility* for liabilities," Def. Br. 39 (emphasis added), and, as to the response to the interrogatory, that "[s]plitting up expenses paid by another *after the sale* is not the same as being jointly liable with someone up front." Marc Goldman's Reply Memorandum of Law in Further Support of His Motion for Summary Judgment 13. But my review of defendant's motion must

14

draw all inferences from Colle's testimony in the light most favorable to Colle. A reasonable juror could readily infer joint personal responsibility for liabilities from that testimony.

CONCLUSION

Defendant's motion for summary judgment is denied. This action will proceed to jury selection and trial on July 9, 2007 at 9:30 a.m. The parties shall appear for a final pre-trial conference on July 2, 2007 at 9:30 a.m., and shall submit a joint pre-trial order on or before June 25, 2007.

So ordered.

John Gleeson, U.S.D.J.

Dated: Brooklyn, New York
May 14, 2007